## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ANITA ROBINSON,

   Plaintiff,

   v.

THE COMMONWEALTH OF
PENNSYLVANIA, OFFICE OF
ATTORNEY GENERAL,

   Defendant.

CIVIL ACTION NO. 1:22-CV-01704

(SAPORITO, J.)

## MEMORANDUM

On September 26, 2022, the plaintiff filed a civil action in the Dauphin County Court of Common Pleas (Doc. 1). The case, removed to the United States District Court for the Middle District of Pennsylvania, alleges federal claims for race and color discrimination under 42 U.S.C. § 2000e-2 and state law claims of race, color, and age discrimination under the Pennsylvania Human Relations Act, 43 P.S. § 955(a).[1] *Id.* The

---

[1] We must briefly note that federal courts have generally held that PHRA claims do not operate as a waiver of Eleventh Amendment immunity. *See Boone v. Pennsylvania Office of Vocational Rehabilitation*, 373 F. Supp. 2d 484, 496 (M.D. Pa. 2005). Nonetheless, the Supreme Court has held that a State waives its Eleventh Amendment immunity when it removes a case from a state court to a federal court. *Lapides v. Board of Regents of the University System of Georgia*, 535 U.S. 613, 616–

defendant filed a motion for summary judgment on August 9, 2023, for the dismissal of all the plaintiff's claims. (Doc. 18). The parties briefed the matter (Doc. 19; Doc. 22; Doc. 23; Doc. 24), and on March 5, 2025, we heard oral argument from the parties' counsel. This matter is now ripe for decision.

I.    **Background**[2]

On September 7, 1999, the plaintiff, Ms. Anita Robinson, was hired as a Computer Systems Analyst at the Commonwealth of Pennsylvania Office of the Attorney General ("OAG"). Approximately five years into her employment at OAG, the plaintiff joined the Human Resources Department as a Human Resource Analyst III. The plaintiff stayed in that position until her termination. In her role as a human resource analyst, the plaintiff's general duties, among others, included: EEO officer, resetting employee passwords, SEAP coordinator, coordinating exit interviews for employees leaving the OAG, and the intake of OAG complaints. The plaintiff claims she generally performed her assigned

---

624 (2002). Here, OAG removed the action to the federal court and thus, waived any asserted immunity under the Eleventh Amendment for the plaintiff's PHRA claims.

[2] The facts are taken from Doc. 23, the plaintiff's response to the defendant's statement of undisputed material facts.

duties satisfactorily. In December 2020, the defendant began to form a plan to restructure its human resources department by consolidating the plaintiff's position and the position of a fellow employee, Erika Nale, into a singular Human Resource Analyst III position. The plaintiff and Ms. Nale were fired on April 13, 2021, because of that restructuring. On July 26, 2021, the defendant hired 35-year-old Vania Tonelotti for the newly created Human Resource Analyst III position. The plaintiff alleges that she was not able to apply for the new analyst position.

On September 26, 2022, the plaintiff filed a civil action in the Dauphin County Court of Common Pleas, alleging federal claims for race and color discrimination under 42 U.S.C. § 2000e-2 and state law claims of race, color, and age discrimination under the Pennsylvania Human Relations Act, 43 P.S. §955(A). The plaintiff, an African American woman, was fifty-nine at the time of the termination. The defendant contends the plaintiff's position was simply eliminated as part of the restructuring of human resources rather than under any discriminatory premise. (Doc. 19, at 8).

## II.    Legal Standard

Rule 56 of the Federal Rules of Civil Procedure dictates summary

judgment should only be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

Parties seeking summary judgment bear "the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotext Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52. A court must first determine if the moving party has made *prima*

4

*facie* showing that it is entitled to summary judgment when evaluating such a motion. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that *prima facie* showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331.

Parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Although evidence may be considered in a form which is inadmissible at trial, the content of the evidence must be capable of admission at trial." *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 595, 599 (M.D. Pa. 2014); *see also Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n.13 (3d Cir. 1999) (noting that it is not proper, on summary judgment, to consider evidence that is not admissible at trial).

## III.  Discussion

The plaintiff has alleged age and race discrimination claims concerning two of the defendant's actions against her in the underlying action: (1) the plaintiff's termination of employment; and (2) the defendant's refusal to allow the plaintiff to apply for the newly opened position. Indeed, the plaintiff's age and race discrimination claims are considered disparate treatment claims, ones that occur when an employee "has treated [a] particular person less favorably than others because of" a protected trait. *United States v. Pennsylvania*, 110 F. Supp. 3d 544, 548 (M.D. Pa. 2015) (quoting *Ricci v. DeStefano*, 557, 577 (2009)). These types of claims require the application of the *McDonnell Douglas* burden-shifting framework test. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The *McDonnell Douglas* burden-shifting framework consists of three steps. First, a plaintiff must show a *prima facie* case of discrimination. *Id.* Next, if the plaintiff succeeds, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's [action]." *Id.* Finally, if the defendant satisfies its burden, the plaintiff must introduce evidence that the legitimate reasons offered by the defendant were a pretext for discrimination. *Id.*

6

## A.    Age Discrimination Under the PHRA

We turn to the plaintiff's alleged age discrimination claims under the PHRA.[3] As we stated above, age discrimination claims under the PHRA require the burden shifting framework under *McDonnell Douglas*. To prevail on a claim of intentional discrimination under the PHRA, a plaintiff must generally show "that his or her age actually motivated or had a determinative influence on the employer's decision to fire him or her." *Giuliani v. Polysciences, Inc.*, 275 F. Supp. 3d 564, 575 (E.D. Pa. 2017) (quoting *Fakete v. Aetna, Inc.*, 308 F.3d 335, 337 (3d Cir. 2002)). Under step one of the *McDonnell Douglas* framework, a plaintiff must show that "(1) the plaintiff is forty years of age or older; (2) that the defendant took an adverse employment action against the plaintiff; (3) the plaintiff was qualified for the position in question; and (4) the circumstances of the adverse action give rise to an inference of unlawful discrimination." *Mitchell v. City of Pittsburgh*, 995 F. Supp. 2d 420, 430

---

[3] The plaintiff has only alleged age discrimination claims under the PHRA, and not the ADEA. Nonetheless, we note that the state PHRA is generally interpreted as being consistent with the ADEA. *See Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015); *Kelly v. Drexel*, 94 F.3d 102, 105 (3d Cir. 1996). Therefore, we shall apply the same standards to the plaintiff's claim under the PHRA that we would apply to the ADEA.

(W.D. Pa. 2014). To establish a *prima facie* case at summary judgment, "the evidence must be sufficient to convince a reasonable factfinder to find all of the elements of [the] *prima facie* case." *Duffy v. Paper Magic Grp.*, 264 F.3d 163, 167 (3d Cir. 2001). The defendant seeks summary judgment on the plaintiff's age discrimination claims on the basis that the plaintiff has failed to satisfy the fourth prong of the discrimination analysis. Here, the defendant does not argue the first, second, and third prongs, and thus, we deem the plaintiff has satisfied these elements in her *prima facie* case as those prongs are not in dispute.

We first analyze whether the record supports evidence that the circumstances of the defendant's first adverse action, the plaintiff's termination, give rise to an inference of unlawful discrimination. We note that our analysis depends on the characterization of the plaintiff's termination. The plaintiff characterizes her termination as a replacement. (Doc. 22, at 8). In age discrimination cases concerning replacement, a plaintiff must only prove that she was "ultimately replaced by another employee who was sufficiently younger as to support an inference of a discriminatory motive." *Hartman v. Select Rehab., LLC*, 528 F. Supp. 3d 373, 382 (E.D. Pa. 2021). The defendant, however, argues

that the plaintiff's termination resulted from a reduction-in-force, rather than being replaced. (Doc. 19, at 9). When an employee is terminated during a reduction-in-force, the fourth prong of a PHRA analysis becomes "whether the employer retained employees not within the protected class." *Smith v. Thomas Jefferson Univ.*, No. 05-2834, 2006 WL 1887984, at *3 (E.D. Pa. June 29, 2006). We find ultimately that the plaintiff has satisfied this prong regardless of the characterization of her termination.

It is undisputed that the defendant hired 35-year-old Vania Tonelotti for the new Human Resource Analyst III job. (Doc. 23, ¶ 28). This fact satisfies the fourth prong of *McDonnell Douglas* under a replacement analysis as the plaintiff was clearly "replaced by another employee who was sufficiently younger as to support an inference of a discriminatory motive."[4] *Hartman*, 528 F. Supp. 3d at 382. Moreover, the plaintiff can point to evidence that defendant "retained employees not within the protected class" to satisfy the fourth prong under a reduction-in-force analysis. *Matchko v. Kost Tire Distributors, Inc.,* No. 3:17-CV-01329, 2021 WL 1172991, at *4 (M.D. Pa. Mar. 29, 2021) (citations

---

[4] The plaintiff was 59-years-old at the time of her termination. (Doc. 23, ¶ 32).

omitted). Persons outside the protected class are those employees who are "similarly situated," that is, they work in the same area in approximately the same position. *Anderson Consol. Rail Corp.*, 297 F.3d 242, 249–50 (3d Cir. 2002)). The plaintiff argues that the additional human resource analysts on her team are the similarly situated parties for purposes of her termination.[5] Indeed, the record shows that the entire team consisted of significantly younger individuals than the plaintiff, and most of those positions were not terminated. (Doc. 23, ¶ 67). The defendant disagrees with this categorization and argues that Ms. Erika Nale, an additional human resource analyst, should be considered the only similarly situated party as she was fired in addition to the plaintiff. (Doc. 24, at 10). Nonetheless, whether two individuals are similarly situated is generally a fact for a jury to decide. *Abdul-Latif v. Cnty. of Lancaster*, 990 F. Supp. 2d 517, 526 (E.D. Pa. 2014) (citing *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004)). Therefore, provided

---

[5] The other analysts are Nicole Kreiser (approximate age: 46); Lauren Beaston (approximate age: 30's); Mandy Saul (age: early 30's); Miranda Shirk (approximate age: late 20's/early 30's); Courtney Bailey (approximate age: mid 20's); Alixandra Eichelberger (approximate age: late 20's/early 30's); and Erika Nale (approximate age: 39). *See* (Doc. 23, ¶ 67).

that the plaintiff has put forth enough evidence, we find a reasonable jury could conclude that the human resource analyst team members were "similarly situated" to the plaintiff in the context of her termination. Thus, we find that the plaintiff has satisfied the fourth prong of her *prima facie* claim of age discrimination.

We next analyze whether the record contains evidence that the circumstances of the defendant's second adverse action, the refusal to consider the plaintiff for the new position, give rise to an inference of unlawful discrimination. We view the defendant's refusal to consider the plaintiff for the position in the same context of a failure to hire, where a plaintiff must prove as the fourth prong that the adverse action "fall[s] under circumstances that raise an inference of discriminatory action, such as that the employer continued to seek out individuals with qualifications similar to plaintiff's to fill the position or filled the position with a person not of the plaintiff's protected class." *Sarullo v. United States Postal Serv.,* 352 F.3d 789, 797 (3d Cir. 2003) (citing *McDonnell Douglas Corp.,* 411 U.S. at 802)). Our analysis here is simple as it is undisputed that the defendant hired 35-year-old Vania Tonelotti for the new Human Resource Analyst III job, and thus filled the position with a

11

person not of the plaintiff's protected class. Therefore, we find that the plaintiff has established a *prima facie* case of age discrimination for the defendant's failure to consider her for the new position.

Nonetheless, the defendant argues that the Court should grant its motion for summary judgment regardless of whether the plaintiff can satisfy the first step of *McDonnell Douglas* because the plaintiff cannot satisfy the third step of *McDonnell Douglas*, requiring the employee to show that the employer's legitimate, nondiscriminatory reason was pretextual. The Third Circuit has recognized that a plaintiff may demonstrate pretext by pointing to evidence allowing a factfinder to disbelieve the employer's reason for the adverse employment action. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015) (citing generally *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)). The evidence must indicate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons" to satisfy the factfinder that the employer's actions could not have been for nondiscriminatory reasons. *Id.* at 644–45 (citing *Fuentes*, 32 F.3d at 765). In other words, a plaintiff must show that the employer's proffered reason was "so plainly wrong that it cannot

have been the employer's real reason." *Keller v. Orix Credit All., Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997).

The defendant contends that the plaintiff's position was eliminated as part of the restructuring of human resources (Doc. 19, at 8), and insists it had concerns about the plaintiff's work performance in her then-current role and fit with the potentially new consolidated role. *See* (Doc. 20-5). Nonetheless, the plaintiff points to numerous annual performance evaluations where she received satisfactory or better marks throughout her employment to dispute the defendant's assertions. *See* (Doc. 23-2; Doc. 23-3; Doc. 23-4; Doc. 23-5). Moreover, the plaintiff has provided testimony by her supervisor confirming that she had worked on constructive feedback while embracing additional roles. (Doc. 23, ¶ 45). The plaintiff further notes that she was never issued any discipline under the company's Employee Disciplinary Policy. (*Id.,* ¶ 50). Indeed, the defendant even admits the plaintiff "was qualified for the position obtained by Tonelotti." (Doc. 24, at 10). Viewing the evidence in light most favorable to the plaintiff, we find that the record supports sufficient evidence for a factfinder to disbelieve the defendant's reason for terminating the plaintiff was solely due to a restructuring of human

resources. Moreover, the defendant's refusal to consider a former employee for a position that it admits met her qualifications constitutes a contradiction in the defendant's rationale for undertaking the employment actions. Here, we find that the plaintiff has satisfied this burden concerning both of the defendant's adverse employment actions against the plaintiff. Therefore, we will deny the defendant's motion for summary judgment concerning the plaintiff's age discrimination claims.

## B.    Race Discrimination Under the PHRA/Title VII

We turn to the plaintiff's race discrimination claims under the PHRA and Title VII. For purposes of deciding a motion for summary judgment in race discrimination actions under the PHRA and Title VII, the claim is subject to the same burden-shifting framework articulated in *McDonnell Douglas*. 411 U.S. at 802–805. A plaintiff must establish she is: (1) a member of a protected class; (2) qualified for the position she sought to attain or retain; (3) suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. *See Daniels v. Sch. Dist. of Philadelphia*, 982 F. Supp. 2d 462, 479 (E.D. Pa. 2013), *aff'd*, 776 F.3d 181 (3d Cir. 2015). The defendant does not contest the first three

elements; it only challenges the fourth. Therefore, we deem the plaintiff has satisfied the first three elements in her *prima facie* case of race discrimination.

Indeed, we need not undertake a significant analysis as our application concerning the plaintiff's age discrimination claims additionally applies to the plaintiff's race discrimination claims. As we held above for the defendant's termination action, while the plaintiff and the defendant differ on how to classify the plaintiff's termination, the plaintiff has provided enough evidence to satisfy either standard. In the event of a replacement for purposes of race discrimination, a showing that the "replacement is of a different race than the plaintiff" can be enough to show an inference of intentional discrimination. *Philips v. Starbucks Corp.*, 624 F. Supp. 3d 530, 539 (D.N.J. 2022) (citing *McDonnell Douglas Corp.*, 411 U.S. at 800–02). The record clearly demonstrates the plaintiff was replaced by an individual of a different race. *See* (Doc. 23, ¶ 28) (providing testimony that Ms. Tonelotti was not Black, but instead born in Brazil). Moreover, similar to age discrimination cases, "[i]n order to establish an inference of causation in a [reduction-in-force] situation, [a plaintiff] must point to a 'comparator,'

15

a similarly situated, non-protected class member who was retained as an employee." *Brown v. Boeing Co.* 468 F. Supp. 2d 729, 734 (E.D. Pa. 2007) (citing *Anderson*, 297 F.3d at 250). As we held in the plaintiff's age discrimination claims, we find the plaintiff has provided enough evidence to convince a factfinder that the remaining human analyst team members constitute the similarly situated parties. Indeed, the record shows that every remaining member was Caucasian, and thus, outside of the plaintiff's protected class. (Doc. 23, ¶ 67). Therefore, the plaintiff has satisfied her burden under the first step of *McDonnell Douglas* concerning the defendant's termination of her employment in her race discrimination claim. Furthermore, in the context of a failure to hire in race discrimination claims, a plaintiff must prove as the fourth prong that the adverse action "fall[s] under circumstances that raise an inference of discriminatory action, such as that the employer continued to seek out individuals with qualifications similar to plaintiff's to fill the position or filled the position with a person not of the plaintiff's protected class." *Sarullo,* 352 F.3d at 797. The plaintiff has done so here, as the record indicates that the newly hired employee was an individual of a different race. Therefore, the plaintiff has additionally satisfied her

16

burden under the first step of *McDonnell Douglas* for the defendant's failure to consider her for the new position.

The defendant additionally argues that the plaintiff has failed to provide any evidence of pretext for her race discrimination claims under the third step of *McDonnell Douglas*, citing the same basis that it did in the plaintiff's age discrimination claims. The plaintiff offers the same pretext argument for her racial discrimination claims as she did for her age discrimination claim. (Doc. 22, at 19). Therefore, our analysis and conclusion remain the same. We have already found that the plaintiff has provided enough evidence that indicates "weaknesses" or "inconsistencies" in the defendant's rationale that it terminated the plaintiff due to a restructuring of human resources. *Willis*, 808 F.3d at 644; *See* (Doc. 23-2; Doc. 23-3; Doc. 23-4; Doc. 23-5) (showing satisfactory annual performance evaluations); (Doc. 23, ¶ 45) (providing evidence that the plaintiff had never been disciplined). Moreover, we have additionally found that the defendant's admission that the plaintiff was qualified for the new position (Doc. 24, at 10), runs contrary to the defendant's refusal to allow the plaintiff to apply for the position. In short, viewing the evidence in light most favorable to the plaintiff, we find the record shows

sufficient evidence for a factfinder to find pretext for the defendant's adverse actions. Thus, we will deny the plaintiff's motion for summary judgment on these counts.

An appropriate order follows.


Dated: March 13, 2025                    *s/Joseph F. Saporito, Jr.*
                                         JOSEPH F. SAPORITO, JR.
                                         United States District Judge